# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELVIA CARREON, | ) 1:08cv0044 DLB |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S<br>) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## BACKGROUND

Plaintiff Elvia Carreon ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On February 14, 2008, the action was reassigned to the Honorable Dennis L. Beck for all purposes.

1

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her initial application in April 2001, alleging disability since 1994 due to severe back pain. AR 91-94, 100-109, 282. Her application was denied at the administrative level and Plaintiff brought an action in this Court. On September 24, 2004, pursuant to the parties' stipulation, the Court remanded the action for additional proceedings. AR 317-318, 322-325.

Pursuant to the remand order, Administrative Law Judge ("ALJ") Bert Hoffman held a hearing on October 25, 2005. AR 710-745. ALJ Hoffman denied benefits on December 14, 2005.[3] AR 275-289. On November 5, 2007, the Appeals Council denied review. AR 269-271.

Hearing Testimony

*March 25, 2003 Hearing*

ALJ Hoffman held a hearing on March 25, 2003, in Fresno, California. Plaintiff appeared with her attorney, Robert Christenson. AR 45.

Plaintiff testified that she was born in 1969 and completed the third grade in Mexico. She cannot read, write or communicate in English. AR 48-49.

Plaintiff performed farm labor jobs for the past 15 years and last worked in September 2000. AR 51. She has two disabled children and gets paid $84 every two weeks to take care of her 14 year old boy. Plaintiff explained that he's "like a baby" and needs everything done for him because "his brain didn't develop." AR 53-55. He goes to school every day from 8:30 am to 2:00 pm, although he sometimes misses school because he doesn't feel well or has seizures. AR 56. Plaintiff dresses him and spoon feeds him. Plaintiff also changes his diapers when she is alone, although her husband helps when he is home. AR 56-57. Her other child is 15 years old and takes medication that calms him down so he can go to school. AR 55.

Plaintiff also has two younger daughters, ages 11 and 12. They are not disabled. AR 57.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] Plaintiff filed a subsequent application for disability insurance benefits in December 2003. The Appeals Council determined that it was a duplicate claim and consolidated it with Plaintiff's Title XVI claim. AR 325.

2

Plaintiff testified that she could not work because of pain in her back and hand, especially her right hand. AR 57. Her hands hurt a lot and go numb and she also has trouble lifting. AR 58. She is able to care for her son because she takes pills for the pain and they help for a little while. AR 58. Plaintiff thought that she could lift 10 pounds with her right hand, but no more because her hand feels tired and numb and has no strength. AR 59.

Plaintiff also has seizures, but has been on medication for one year and has not had any since. AR 60. Prior to medication, she had about five seizures in five months. AR 60-61. She still gets dizzy twice a day, for about 15 minutes a time, and needs to sit down. AR 61.

Plaintiff testified that she takes medication for an ulcer, but it still causes pain everyday. When she lifts something heavy, it feels like something is going to "burst" inside her stomach. AR 63. Plaintiff also has back pain and foot pain, as well as problems with her neck. AR 64. Bending or twisting her head causes pain. AR 65.

Plaintiff does not have a driver's license and does not drive. AR 65.

During the day, Plaintiff stays home and takes care of her children. When her husband is home, he helps her. Plaintiff fixes meals and does the laundry. AR 66. She also mops, sweeps and vacuums, but has to take her pills beforehand. AR 67.

*October 25, 2005*

Pursuant to the remand order, ALJ Hoffman held a second hearing on October 25, 2005, in Fresno, California. Plaintiff appeared with Mr. Christenson. Vocational expert ("VE") Thomas Dachelet also appeared and testified. AR 710.

Plaintiff testified that both of her disabled children still live with her and she cares for the younger one more than the older one. She takes care of the younger one "completely." AR 717. She changes him and feeds him, and although he is not in a wheelchair, he needs help walking sometimes. AR 718. One of her daughters is also disabled, but is mostly able to care for herself. AR 719. All of her children go to school during the day and Plaintiff stays home alone. AR 720. Her daughter helps her with the cooking. AR 721.

Plaintiff believed that since her last hearing, she has gotten worse. Her arms swell and her hands and fingers are numb. She has problems holding and grasping things because her

hands are stiff, and thought that she could hold something for five to ten minutes. AR 729. She thought she could lift a gallon of milk, but could not lift 10 pounds for two or three hours a day. She uses a can opener to open jars and can open doors. AR 726-727. When she goes to the store, she sometimes drives. AR 728.

Plaintiff also has a lot of pain in her back that prevents her from sitting for more than 10 to 20 minutes. She thought she could stand for 10 to 15 minutes. AR 729-730. She takes rest breaks about every 20 to 30 minutes and has to sit down and take pain pills. AR 730. Her pills sometimes make her feel weak, but only a "little bit." AR 730.

For the first hypothetical, the VE confirmed that a person who could only sit for 10 minutes and stand for 20 minutes, and who would then require a 20 to 30 minute rest break, could not perform work. AR 732.

For the second hypothetical, the ALJ asked the VE to assume a person with an unskilled work background who could lift 50 pounds occasionally, 25 pounds frequently, and stand, walk and sit for approximately six hours in an eight hour day. This person must avoid repetitive and forceful gripping with the dominant right arm, must avoid unprotected heights and dangerous machinery and cannot operate vehicles or other moving machinery. This RFC precluded all of Plaintiff's past medium work, as well as all other medium work. AR 732-733. This person could perform some light, unskilled work, such as a flagger. AR 733. However, the flagger position was subject to a 90 percent erosion for hand limitations. AR 733-734. Given the erosion for the hand limitation, there were approximately 81,000 light positions available. AR 735.

Plaintiff's attorney also asked the VE to assume a person who could lift and carry 10 pounds frequently, 20 pounds occasionally, but who was limited to occasional reaching, handling, feeling, grasping and fingering with the right wrist. This person could not perform Plaintiff's past relevant work, or any other work. AR 738-741.

The VE testified that only one-third of unskilled medium jobs exist for someone who could occasionally lift and carry 50 pounds, 25 pounds frequently, who could stand, walk and sit

for six hours a day with a sit/stand option, but had to avoid repetitive and forceful grasping with the right dominant hand.  AR 741-742.

Medical Record

A May 2001 lumbar x-ray revealed angular scoliosis centered at L4-5, with no disc space narrowing or destructive lesions.  The radiologist noted that the scoliosis may be due to "positional, patient discomfort factors."  AR 179.

On June 18, 2001, Plaintiff saw Michael Wlasichuk, M.D., after injuring her back while lifting her disabled child.  She complained of pain in her thoracic spine that worsens when she picks up objects.  Her examination was essentially normal, except for tenderness at the mid-thoracic paraspinal musculature with trigger points and spasm.  Strength, sensation and muscle tone were normal.  He assessed chronic thoracic muscular strain without any evidence of radiculopathy.  Dr. Wlasichuk did not believe she had any impairment or restriction that would limit her ability work.  AR 173-175.

X-rays of Plaintiff's lumbosacral spine taken on September 19, 2001, showed a mild dextroscoliotic curve and mild osteoarthritic change of the lumbosacral spine, and decreased intervertebral disc space at the L5/S1 level.  AR 229.

Plaintiff attended physical therapy in November 2001.  AR 677-680.

After complaining that she injured her back eight years ago while working in the field, Plaintiff underwent an MRI on March 11, 2002.  The test was normal.  AR 222, 224, 226-228.

On March 27, 2002, Plaintiff reported a seizure during a medical procedure and another one about two months prior.  Testing was recommended.  AR 241.

Plaintiff began treating with Mythili Sundaresar, M.D., on April 9, 2002.  She complained of dizziness and headaches.  Her neurological examination was essentially normal.  Dr. Sundaresar believed that Plaintiff had a lot of "psychological overlay" for her problems, but he ordered testing and bloodwork.  AR 218-219.

Plaintiff underwent a nerve conduction study of her upper extremities on June 19, 2002.  The test showed evidence of right carpal tunnel syndrome ("CTS") and a bilateral C7 root lesion.  AR 208-209.

Plaintiff had x-rays of her cervical spine taken on May 1, 2002. The test revealed degenerative disc disease at C5-6. AR 217.

An EEG performed on May 15, 2002, was normal. AR 216.

A July 19, 2002, nerve conduction study of the lower extremities was essentially normal. AR 206-207.

Plaintiff returned to Dr. Sundaresan on August 7, 2002, after failing to keep appointments in June and July. He started Plaintiff on Neurontin. AR 204.

Plaintiff returned to Dr. Sudaresan on March 5, 2003. It was her first appointment with him since August 2002, after she failed to keep numerous appointments. She had been seizure free. Although she continued to complain of problems in her right hand, there were no clinical findings. AR 587.

A March 21, 2003, CT scan of Plaintiff's neck was normal from C5 downward to T1, and showed no stenosis. AR 586.

Plaintiff saw Dr. Sundaresan in follow-up on April 2, 2003. He noted that Plaintiff's symptoms were markedly relieved with Neurontin. AR 585.

Plaintiff's Neurontin was increased to 300 mg because of chronic pain in June 2003. AR 615-617.

Treatment notes from July 11, 2003, indicate that Plaintiff was not taking her medications as directed. AR 614.

Plaintiff attended physical therapy in June and July 2003. Upon discharge, Plaintiff demonstrated no improvement, either subjectively or objectively. She was given a comprehensive strengthening and stretching exercise program. AR 680A-681.

On July 25, 2003, Plaintiff saw Gilbert Sunio, M.D., for a consultive examination. She complained of pain in her neck, lower back and right upper extremity. When Plaintiff's pain was not severe, she could perform light work, cook, wash dishes, do laundry, do yard work, and mop the floor. On examination, Plaintiff sat comfortably without need for constant change of position and she could get on and off the examination table easily. She could also take off her shoes easily. Straight leg raising was negative. There was tenderness on the cervical and lumbar spine

areas with no swelling, effusion, or discoloration.  There was minimal crepitus on both the lumbar and cervical spine areas, as well as significant tenderness on the right wrist joint, anterior side.  Right hand grip strength was 4/5 and there was diminished sensation to pinprick and touch.  AR 588-591.

Dr. Sunio diagnosed neck and lower back pains, probably musculoskeletal, with only slight limitation in movement and minimal crepitus and tenderness suggestive of osteoarthritis, right wrist pain probably secondary to CTS, controlled seizure disorder, bronchial asthma not in exacerbation, and peptic ulcer disease, under good control.  He opined that Plaintiff could stand and walk for six hours and sit for six hours with regular breaks.  She could lift and carry 10 pounds frequently, 20 pounds occasionally, and could kneel, crawl or squat.  Plaintiff was limited to occasional reaching, handling, feeling, grasping and fingering with the right wrist.  AR 591-592.

On August 13, 2003, State Agency physician James B. Peery, M.D., completed a Physical Residual Functional Capacity Assessment form.  Dr. Peery opined that Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, stand and/or walk for six hours and sit for six hours.  She had to avoid repetitive, forceful pushing and pulling with the right upper extremity.  Plaintiff could never climb ladders, ropes or scaffolds, but could frequently climb ramps and stairs.  She could frequently balance, kneel and crawl and could occasionally stoop and crouch.  Plaintiff also had to avoid repetitive, forceful gripping and grasping with the right upper extremity.  Plaintiff had to avoid even moderate exposure to hazards.  AR 594-600.

Treatment notes from December 2003 indicate that Plaintiff needed to be referred to a pain specialist because of chronic pain.  AR 607.

On January 26, 2004, State Agency physician James V. Glaser, M.D., completed a Physical Residual Functional Capacity Assessment form.  He opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk for six hours and sit for six hours.  She had to avoid repetitive, forceful pushing and pulling with the right upper extremity.  Plaintiff could never climb ladders, ropes or scaffolds, but could frequently climb ramps and stairs.  She could frequently balance, kneel and crawl and could occasionally stoop and crouch.  Plaintiff also

had to avoid repetitive, forceful gripping and grasping with the right upper extremity, as well as frequent fingering (such as keyboarding) with the right upper extremity. Plaintiff had to avoid concentrated exposure to fumes, etc., and hazards. AR 635-642.

On August 18, 2004, Plaintiff saw Zaky Moussa, M.D., for a consultive examination. She complained of neck pains. Range of motion testing was within normal limits. Her neurological examination was normal, including mental status examination, and coordination/gait/station testing. Motor power was 5/5 in all extremities. She had no deficit on sensory examination. Dr. Moussa indicated that Plaintiff had a normal physical examination and that based on her history and examination, she would be able to work full-time, with no restrictions necessary. AR 646-649.

Plaintiff underwent an MRI of her cervical spine on September 3, 2004. The test revealed mild bulging at C3-4, C4-5 and C5-6 without evidence of herniated nucleus pulposus. AR 686.

On September 21, 2004, State Agency physician Durell Sharbaugh, M.D., completed a Physical Residual Functional Capacity Assessment form. He opined that Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, stand and/or walk for six hours and sit for six hours. Plaintiff could never climb ladders, ropes or scaffolds. Plaintiff also had to avoid forceful gripping and grasping with her right hand, as well as even moderate exposure to fumes, etc., and hazards. AR 666-667.

Plaintiff began complaining of depression in December 2004. AR 425. She was diagnosed with major depression and started on medication in February 2005. AR 409, 411.

In March 2005, Plaintiff reported that her depression was much better. AR 405.

In April 2005, Plaintiff again reported that her depression was better, although she continued to have insomnia. AR 403.

On April 30, 2005, Plaintiff saw Juliane Tran, M.D., for a consultive examination. She complained of neck and back pain and reported that she could cook, vacuum, mop and do dishes, but needed to rest at the end of the chore. On examination, she walked without assistance and was able to tolerate sitting. Sensation was decreased in the right C6-C8 T1 dermatone and decreased diffusely in the right hand. There was also decreased sensation from both knees to

both feet, although not in a particular dermatone pattern.  Plaintiff had minimal tenderness over the cervical spine or lumbar spine or sciatic notch.  She complained of neck and back pain during range of motion testing and straight leg raising was negative.  Motor strength, muscle tone and bulk were intact.  AR 703-705.

Dr. Tran diagnosed neck pain and back pain probably from cervical spine strain, with no evidence of radiculopathy.  He explained that her examination was fairly good in terms of range of motion, strength and reflex testing.  There was no evidence of CTS by Tinel's testing.  Plaintiff would be restricted with activities involving lifting more than 100 pounds occasionally, or more than 50 pounds frequently.  She had no restriction in climbing, balancing, working with heights, or in fingering, grasping or overhead reaching.  There were no sitting, standing, walking, bending, stooping, kneeling or crouching restrictions.  AR 706.

In June 2005, Plaintiff complained of headaches, but reported that she was feeling good.  AR 399.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of degenerative disc disease of the cervical spine and CTS of the right hand.  AR 282.  Despite her impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry 50 pounds occasionally, 25 pounds frequently, and stand, walk or sit for six hours each in an eight hour day.  Plaintiff had to avoid repetitive and forceful gripping and grasping with the right hand.  AR 286.  Based on this RFC, the VE testified that Plaintiff could not perform her past work as an agricultural laborer, but could perform a significant number of light jobs.  AR 286-287.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

*Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[4] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (degenerative disc disease of the cervical spine and CTS of the right hand) based on the

---

[4] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform her past relevant work; but (5) retains the RFC to perform a significant number of light jobs. AR 288-289.

Here, Plaintiff argues that the ALJ (1) erred in failing to explain why he rejected Dr. Sunio's opinion; and (2) erred in assessing her pain.

## **DISCUSSION**

A. <u>Dr. Sunio's Opinion</u>

Plaintiff first argues that the ALJ erred in failing to explain why he "obviously" rejected Dr. Sunio's opinion. Opening Brief, at 9.

The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

After his July 2003 consultive examination, Dr. Sunio opined that Plaintiff could stand and walk for six hours and sit for six hours with regular breaks. She could lift and carry 10 pounds frequently, 20 pounds occasionally, and could kneel, crawl or squat. He further opined that she was limited to occasional reaching, handling, feeling, grasping and fingering with the right wrist. AR 591-592.

Dr. Sunio's lifting limitations and manipulative limitations were more restrictive than those incorporated into Plaintiff's RFC. Indeed, the record contained numerous functional assessments performed by both consultive and non-examining physicians. Insofar as those opinions conflicted, it was the ALJ's duty to resolve such conflicts. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995); *Magallanes v. Bowen*, 881 F.2d 747, 751, 755 (9th Cir. 1989).

Plaintiff is correct that the ALJ did not specifically discuss Dr. Sunio's opinion. However, as the Ninth Circuit has explained, "we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion" where the ALJ does not specifically recite reasons for the rejection. *Magallanes*, 881 F.2d at 756. The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof and making findings. *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007) (quoting *Magallanes*, 881 F.2d at 751).

In his decision, ALJ Hoffman set forth a detailed summary of the medical record, including state agency physician assessments and at least two consultive assessments. In arriving at Plaintiff's RFC, he explained that it was consistent with the overall medical record and the January 2004 assessment by State Agency physician Sharbaugh. AR 286. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (findings of a nontreating, nonexamining physician can amount to substantial evidence where other evidence in the record supports the findings).

Indeed, while the medical evidence supports some restrictions, it does not support the severe lifting and manipulative restrictions imposed by Dr. Sunio. For example, in 2001 and 2004, Dr. Wlasichuk and Moussa examined Plaintiff and found that she had *no* limitations based on their unremarkable physical examinations. AR 173-175, 646-649. In 2005, Dr. Tran examined Plaintiff and determined that she could perform heavy work in light of her essentially normal physical examination. AR 703-706.

Plaintiff contends that Dr. Sunio's report is supported by the objective evidence, such as X-rays, MRIs and the nerve conduction studies. While these tests do establish the existence of Plaintiff's degenerative disc disease and CTS, they do not assist the ALJ in determining what she can do, despite these impairments. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment is insufficient proof of disability).

In addition to citing the medical evidence, the ALJ noted that Plaintiff has received only conservative treatment in the form of medication and physical therapy. AR 285. Despite claims of chronic pain, she is not receiving treatment consistent with such an impairment. AR 285. In fact, on more than one occasion, Plaintiff reported an improvement in her symptoms with

12

medication. AR 399, 403, 405, 585. Although her pain medication was increased in 2003, just two months after she reported an improvement, there was no change in objective symptoms.

The ALJ also contrasted Plaintiff's daily activities with her allegations. For instance, Plaintiff is able to take care of a disabled teenager who is almost totally dependent on her. AR 286. There were also numerous instances in the record where she reported that she could perform many functions, such as cooking, cleaning, shopping and caring for herself. AR 286.

From the ALJ's decision, then, the Court is able to conclude that the ALJ set forth specific and legitimate reasons for rejecting the more restrictive limitations of Dr. Sunio. Despite Plaintiff's belief, the objective medical evidence and other factors considered by the ALJ simply do not support extreme restrictions. In any event, the role of this Court is not to determine if there is evidence to support the position advanced by Plaintiff, but rather the Court must determine if the ALJ's decision is supported. Here, the ALJ's decision is supported by substantial evidence and is free of legal error. Based on this finding, the Court also rejects Plaintiff's claim that the ALJ erred in not accepting the hypothetical incorporating Dr. Sunio's restrictions.

B.    Plaintiff's Testimony

Finally, Plaintiff argues that the ALJ erred in finding that her pain was not disabling.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment," *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

In discussing Plaintiff's testimony, the ALJ found it reasonable that Plaintiff had some limitations resulting from her combined medically determinable impairments. AR 286. However, given the medical evidence and the inconsistencies between her testimony and her activities, the ALJ found that she was not disabled to the extent alleged.

As the Court explained above, the medical evidence did not support extreme restrictions. The objective evidence was minimal and there were numerous unremarkable examinations. The record also contained instances where Plaintiff's subjective complaints where questioned, such as when Dr. Sundaresar indicated, after an essentially normal neurological examination, that there was a lot of "psychological overlay" her problems. AR 218-219.

In this regard, the ALJ also noted that Plaintiff was treated conservatively with medical and physical therapy, and that surgery had not been discussed. AR 285. Nor was Plaintiff receiving treatment consistent with a chronic pain syndrome. AR 285. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (evidence of "conservative treatment," such as a claimant's use of only over-the-counter pain medication, is sufficient to discount a claimant's testimony regarding severity of an impairment); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ is permitted to consider lack of medical treatment in assessing credibility). She also repeatedly failed to keep appointments and take her medications as directed. AR 285-286. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (claimant's failure to seek or follow prescribed treatment is a proper basis for finding her allegations of disabling pain and other symptoms not credible).

Finally, the ALJ noted that despite her complaints, Plaintiff was able to perform numerous activities during the day, including taking care of her severely disabled son. She was also able to cook, clean, do laundry, shop and care for herself, activities which the ALJ described as consistent with light exertion. AR 286. The ALJ may use "ordinary techniques" in addressing credibility. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

Based on the above, the ALJ set forth sufficiently specific reasons to permit the Court to conclude that the ALJ did not arbitrarily discredit Plaintiff's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). Plaintiff's claim is without merit and must be denied.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Elvia Carreon.

IT IS SO ORDERED.

Dated:   **September 11, 2008**             /s/ **Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE